# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

|                                  |                          |
|----------------------------------|--------------------------|
| UNITED STATES OF AMERICA,        |                          |
| Plaintiff,                       |                          |
| v.                               | Case No. 15-CR-110-JPS   |
| MARKEESE D. SINGLETON,           |                          |
| Defendant.                       | ORDER                    |

On June 2, 2015, a federal grand jury returned a one-count indictment against the defendant, Markeese D. Singleton, charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Docket #1). Before the Court is the defendant's motion to suppress all evidence obtained as a result of a search warrant executed on 3504 W. National Avenue, Milwaukee, WI. (Docket #12). The defendant argues that the affidavit in support of the search warrant failed to establish probable cause. *Id.* The Court will deny the defendant's motion to suppress for the reasons detailed below.

1.   BACKGROUND

On March 10, 2015, Milwaukee Police Detective Michael Caballero ("Caballero") applied for and received a state search warrant for 3504 W. National Avenue, Milwaukee, Wisconsin; the search warrant was issued by a Milwaukee County Circuit Court Commissioner. (Docket #12 at 2-3). Caballero's search warrant request was supported by a five-page affidavit ("the Affidavit") (*see* Docket #12-1).

The Affidavit relied solely on information received from an unnamed informant who had been recently arrested. The Affidavit is mostly silent as to the specifics concerning the reliability (or track record) of the informant;

however, the Affidavit does state—in conclusory fashion—that the informant is reliable, and partly ascribes this to the informant making statements that were against his or her penal interest. (Docket #12-1 at 3).

According to the Affidavit, the informant stated that within the past fourteen (14) days he was in "the upper left unit of a multistory building" at 3504 W. National Avenue, and observed two firearms and a ballistic vest. *Id.* at 3-4. The informant identified the owner of the firearms and vest as "Keese," and indicated that he believed "Keese" to be a convicted felon. *Id.* at 4. The informant also provided specific details about the firearms and vest—*i.e.* what type of firearms were in the unit and the color and paneling of the vest. *Id.* The affiant stated that the informant's identification of the firearms was reliable, given the informant was "able to articulate…the difference between types of firearms." *Id.* Lastly, the informant further stated that "Keese" lived with his girlfriend, "Areile," presumably at the address noted above. *Id.*

The affidavit then goes on to note the efforts Milwaukee Police Department undertook to corroborate the informant's information. Specifically: (1) reviewing police records and determining that "Keese" was Markeese Devon Singleton, the defendant; (2) showing the informant a photo array (of six photos) from which the informant positively identified the defendant as "Keese"; (3) reviewing police records and determining that "Areile" was Areile M. Miles ("Miles"); (4) confirming that Miles lived at 3504 W. National Avenue by reviewing police records; (5) conducting surveillance on 3504 W. National Avenue and identifying a car registered by the defendant "unoccupied and parked in the rear" of the building—a car the informant also identified as the defendant's; (6) reviewing police records

Page 2 of 13

Case 2:15-cr-00110-JPS Filed 07/17/15 Page 2 of 13 Document 16

pertaining to the license plate of the aforementioned car, which turned up a traffic ticket in the defendant's name and a parking citation he received in front of Miles' address at 3504 W. National Avenue; and (7) reviewing Wisconsin court records to confirm that the defendant was a felon and prohibited from possessing a firearm. *Id.* at 4-5.

On March 12, 2015, the search warrant was executed and "ATF Task Force officers…located a loaded Smith and Wesson, model 5903, 9mm pistol and a bullet proof vest." (Docket #13 at 2). That firearm is the basis of the instant charges against the defendant.

2. DISCUSSION

The defendant seeks suppression of all evidence obtained as a result of the above-mentioned search warrant. The defendant argues that the Affidavit failed to establish probable cause because: (1) the informant's reliability and credibility were not sufficiently established in the Affidavit; (2) the facts provided by the informant lacked detail; and (3) there was insufficient corroboration of the informant's information about the defendant, and no corroboration of the informant's claim that the defendant possessed two firearms. (Docket #12 at 2).

The Court will begin by explaining the legal standard applicable to the instant motion, before analyzing the defendant's arguments in support of suppression.

  2.1 Legal Standard—Probable Cause Based Upon Information Provided by an Informant

"When a judge receives an application for a search warrant, the judge's task is to make a practical, common-sense decision about whether the evidence in the record shows a fair probability that contraband or evidence
Page 3 of 13

of a crime will be found in a particular place." *United States v. Miller*, 673 F.3d 688, 692 (7th Cir. 2012). An issuing judge's determination of probable cause is given "great deference" by a reviewing court, and "the Fourth Amendment requires no more than a substantial basis for concluding that a search would uncover evidence of a crime." *United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

"When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003). And, where that affidavit is based on an informant's information, "*Gates* adopted the 'totality-of-the-circumstances analysis that traditionally has informed probable cause determinations.'" *Glover*, 755 F.3d at 816 (quoting *Gates*, 462 U.S. at 238). Assessing the totality of the circumstances is necessary because "the whole may be more than the sum of the parts when assessing probable cause," *United States v. Harris*, 464 F.3d 733, 740 (7th Cir. 2006), and "[c]ases that test the sufficiency of affidavits for warrants obtained based on informants are highly fact-specific." *Glover*, 755 F.3d at 816.

The Seventh Circuit has identified "five primary factors that [courts should] consider" when analyzing—under the totality of the circumstances—an affidavit based on an informant's statement: "the level of detail, the extent of firsthand observation, the degree of corroboration, the time between the events reported and the warrant application, and whether the informant appeared or testified before [the warrant issuing judge]." *Id.*; *see United States v. Searcy*, 664 F.3d 1119, 1122 (7th Cir. 2011); *United States v. Bell*, 585 F.3d 1045, 1050 (7th Cir. 2009); *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002). An affidavit offers "another indicium of reliability" if the informant's

statements were made against his or her penal interest. *United States v. Johnson*, 289 F.3d 1034, 1039 (7th Cir. 2002).

At bottom, "no single [factor] is dispositive; 'a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability.'" *Id.* (quoting *United States v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999)).

2.2     Analysis

The gravamen of the defendant's argument for suppression is that the search in this case "relie[d] solely on the claims of an untested, unnamed, recently-arrested criminal informant" who "ha[d] no track-record of reliability." (Docket #12 at 1). And, according to the defendant, law enforcement did nothing of consequence to shore up the affidavit, instead "corroborat[ing] little more than the identity of the targeted citizen and the existence of the residence." *Id.* The corroboration of these "innocent facts," the defendant argues, proved the informant's familiarity with the defendant, but not the informant's claim that the defendant possessed firearms illegally. *Id.*

To begin, the defendant's arguments for suppression are well taken. Indeed, the Seventh Circuit has taken issue with similar detail-challenged affidavits in countless previous cases, as the defendant points out. For example, in *Peck*, the Seventh Circuit found a search warrant affidavit infirm where the informant gave a "minimal amount of detail" to support her claim that drugs were present in the defendant's house. 317 F.3d at 756; *see also Bell*, 585 F.3d at 1050-51 (affidavit with details similar to *Peck* left "much to be desired"). Namely, the informant "failed to give specific details about the drugs in Peck's house such as where the drugs were hidden, the total amount

of drugs possessed, or the frequency with which Peck sold drugs." *Id.* Instead, she only provided "that she had been in the house and was shown drugs." *Id.* And, similar to the instant case, the police "compound[ed] the weakness of [the informant's] statement [by] fail[ing] to corroborate her allegations." *Id.* The only corroboration was a police record check, which confirmed that Peck had a previous arrest for drug possession. *Id.* The Seventh Circuit declined to state what specific corroboration is necessary, but did note that "the police must do more than simply run a record check of the accused, because this alone does not corroborate a CI's statements alleging that a search will uncover evidence of a crime." *Id.*; *see also United States v. Weaver*, 99 F.3d 1372, 1379 (6th Cir. 1996) (noting that "it is possible that weak factual information may be bolstered if the authorities undertake probative efforts to corroborate an informant's claims").

The Seventh Circuit has also taken issue with affidavits from previously unknown informants who offer "little more than mere conclusions and assertions of wrongdoing on the part of the defendant, without an adequate factual foundation." *Koerth*, 312 F.3d at 867; *see Bell*, 585 F.3d 1050 (finding wanting an affidavit that "did not indicate whether [the informant] had provided information to law enforcement in the past, nor did it give any information about the nature of [the informant's] relationship with [the defendant]"); *United States v. Garcia*, 528 F.3d 481, 486 (7th Cir. 2008)*; United States v. Mykytiuk*, 402 F.3d 773, 776-777 (7th Cir. 2005).

The underlying concern with previously unknown informants making bald assertions of illegal conduct is that the informant "could [be] a rival drug dealer, an angry customer, or had some other beef with [the defendant]," *Bell*, 585 F.3d at 1050, and thus an explanation of why the

informant's information is nonetheless reliable is crucial. Or, lacking that, law enforcement must endeavor to corroborate—in a sufficiently convincing manner, where possible—the substance of the informant's allegations. *See Glover*, 755 F.3d at 818 ("Where information about credibility is not available, other factors such as extensive corroboration may overcome the doubt inherent in relying on an informant without a track record.") (citing *Koerth*, 312 F.3d at 867-68).

As summarized in *Searcy*, then, *Peck*, *Koerth,* and *Bell* demonstrate that the reliability of an informant is seriously undermined when there is both a lack of factual specificity in the informant's claims against the defendant *and* the informant has no history of providing reliable information to police. 664 F.3d at 1124. And, should these problems be compounded by a lack of corroboration of the informant's statements (by police or others), as was the case in *Koerth*, a court is likely to find that the affidavit failed to establish probable cause. 312 F.3d at 868; *see also Mykytiuk*, 402 F.3d 773 (noting that affidavits that the Seventh Circuit has "found so wanting in the past" contained "uncorroborated, conclusory allegations from unproven informants"). This is so because upholding search warrants without such indicia of reliability risks "water[ing] down the probable cause standard in the name of fighting crime" by "ratify[ing] the search of a home based on the use of essentially conclusory statements without corroboration." *Koerth*, 312 F.3d at 868.

So what does this all mean in the instant matter? It means, to be sure, that the affidavit here bears many of the hallmarks of unreliability noted above. First, the reliability of the informant is not established in the affidavit with much more than conclusory statements which are to be given no

weight, *see id.* at 867 ("[O]ur cases hold that [conclusory statements of reliability], standing alone without any supporting factual information, merit absolutely no weight and that 'information obtained from a [supposed] reliable source' must be treated 'as information obtained from an informant of unknown reliability.'") (quoting *Brack*, 188 F.3d at 755). And, while the affidavit states that the informant is reliable because the statements made were against his or her penal interest (which may be true), *see id.* at 870, this too is alleged in conclusory fashion. The affidavit does not state what crime the informant was charged with at the time the statements were made, nor, more generally, does it describe the informant's criminal history at all (allegedly to protect the informant's identity).

Second, the reliability of the informant's information is only minimally bolstered by the fact that the information was obtained by first-hand observation, given the lack of factual detail. *See Glover*, 755 F.3d at 817. True, the informant did specify what type of guns the defendant possessed, and described the bulletproof vest in some detail, but the informant did not elaborate on where exactly he saw those items (or where they could be found)—*i.e.* in the closet, under the couch, etc.—nor did the informant explain why those items *were the defendants* and not someone else's (like his girlfriend's). *Id.* Nor, for that matter, did the informant explain why he was at 3504 W. National Avenue, how he knew the defendant, or how he knew the defendant was a convicted felon. *See Garcia*, 528 F.3d at 486; *Peck*, 317 F.3d at 756. Just as in *Peck*, rather, all the informant really provided was that he had been in the house and seen the guns. *See Peck*, 317 F.3d at 756; *but see Searcy*, 664 F.3d at 1123 (noting that the lack of specificity takes on less

importance in a gun possession case, because "the mere possession of a firearm is all that is required to establish the commission of the offense").

Third, law enforcement's corroboration of the informant's statement does not exactly inspire confidence, given that, just as in *Glover*, the police "confirmed only minor facts and legal conduct." 755 F.3d at 817. Namely, the police merely confirmed that the defendant drove a particular car, parked at a particular place (and received a parking citation there), had a felony conviction, *see id.* (noting in a parenthetical that "[b]eing a convicted felon is not itself indicative of criminal activity"), and could be correctly identified by the informant from a photo array. As the defendant convincingly argues, by corroborating these "innocent details" the police did not bolster the informant's "claim of illegality, they simply corroborate[d] [the informant's] familiarity with the target." (Docket #15 at 2).

Were that the universe of the analysis necessary to resolve the defendant's motion, the Court would find this a close case. But, it is not. Neither party discussed in detail *United States v. Dismuke*, 593 F.3d 582 (7th Cir. 2010), *abrogated on other grounds, as recognized in United States v. Miller*, 721 F.3d 435, 438-39 (7th Cir. 2013), which is factually indistinguishable from the instant matter. In *Dismuke*, just as here, an informant: (1) stated that he had recently seen the defendant in possession of guns in his home; (2) provided an exact address; and, (3) described the guns with some particularity. *Id.* at 587. And, similar to the underlying facts here, law enforcement in *Dismuke* "did make some effort to corroborate the informant's information," by asking the informant to identify the defendant from a photograph, confirming the informant knew about firearms, conducting surveillance at the defendant's address to confirm his residence there, using

police records to confirm other information including that the defendant had a prior felony conviction. *Id.* Finally, just as is the case here, *Dismuke* involved a previously unknown informant whose credibility and reliability were unsubstantiated.

The Seventh Circuit also described *Dismuke* as "a close case" given the reliability issues noted above and the weak corroboration of the informant's statement undertaken by law enforcement. *See id.* at 588 (noting that law enforcement corroborated only the defendant's identity and residence which was "important" but corroborating those innocent facts did not "directly bolster the informant's claim that Dismuke illegally possessed guns at his home"). Nevertheless, the Seventh Circuit held that, in light of the deference owed to the warrant-issuing judge, and considering the totality of the circumstances, the affidavit in *Dismuke* was sufficient, "albeit just barely," to sustain the issuance of the search warrant. *See also Glover*, 755 F.3d at 817 (summarizing the facts and holding in *Dismuke* and noting that despite being a "close case," with shortcomings in the affidavit, the warrant was properly issued).

If the affidavit in *Dismuke* was sufficient, the Court is obliged to reach the same conclusion, here, notwithstanding the weaknesses noted above. And rightly so, given that the affidavit here has *more* indicia of reliability than the affidavit in *Dismuke*. To wit, unlike in *Dismuke* where there was a bald assertion that the informant was "reliable," here there is some—albeit mostly conclusory—evidence to bolster the same assertion: the affidavit states that the informant made the statement against his or her penal interest and that the informant had "provided names of person's currently in unlawful possession of firearms and narcotics and positively identified them

Page 10 of 13

through Milwaukee Police Department booking photos" (Docket #12-1 at 3). *See Johnson*, 289 F.3d at 1039; *Koerth*, 312 F.3d at 870. And, there is arguably more corroboration here than in *Dismuke*, given that law enforcement not only corroborated the informant's identification of the defendant, but also corroborated the informant's statements about the defendant's girlfriend (her identity and that she lived at 3054 W. National Avenue).

And, despite the defendant's arguments to the contrary, this case is not analogous to *Glover*, where the Seventh Circuit found that "the complete omission of known, highly relevant, and damaging information" about an informant's credibility from a search warrant affidavit was impermissible. 755 F.3d at 811. True, the information in the affidavit about the informant here leaves much to be desired; we do not know this person's criminal history, what crime the person was charged with, nor the extent of the person's prior interactions with law enforcement. But, unlike the affidavit in *Glover* which omitted reliability information about the informant *writ large*, the affidavit here does indicate that the informant was recently arrested and gave the information about the defendant after admitting to the offenses he or she was arrested for. (*See* Docket #12-1 at 3).

The defendant argues that "the affidavit itself not only fails to establish the informant's reliability, it provides affirmative reason to doubt the informant's reliability"; specifically, that "a 'newly-arrested informant merits a greater dose of skepticism when assessing his credibility.'" (Docket #12 at 5) (quoting *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005)). The defendant is surely correct that the issuing judge should have been skeptical of the informant, here, but this is exactly why the instant case differs from *Glover.* There, the Seventh Circuit stated that the affidavit "did not provide

Page 11 of 13

Case 2:15-cr-00110-JPS   Filed 07/17/15   Page 11 of 13   Document 16

the magistrate with even a minimum of information on credibility that might have triggered further inquiry," and thus the magistrate was "unable to fulfill his role as a neutral arbiter." *Glover*, 755 F.3d at 818. Here, the affidavit included the informant's recent arrest, which could have—but did not—trigger further inquiry into the informant's veracity. As such, this case cannot be categorized as one, like *Glover*, where law enforcement's wholesale omission of credibility information effectively divested the warrant-issuing judge of her role as a neutral arbiter.

Finally, even if the Court was inclined to find the affidavit failed to establish probable cause—which, to be sure, the Court is not—the good faith exception would apply. "In *Leon*, the Supreme Court held that even if a search warrant was invalid because the supporting affidavit failed to support a finding of probable cause, evidence seized in executing the warrant should not be suppressed if the police officers relied in good faith on the judge's decision to issue the warrant." *Miller*, 673 F.3d at 693 (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). "An officer's decision to obtain a warrant is *prima facie* evidence that the officer was acting in good faith." *United States v. Reed*, 744 F.3d 519, 522 (7th Cir. 2014).

In light of the Court's analysis of the relevant law above, and particularly in light of *Dismuke*, the defendant cannot show that "the warrant was so lacking in probable cause that the officer could not reasonably rely on the judge's issuance of it," *id.* (citing *Garcia*, 528 F.3d at 487); *see also Glover*, 755 F.3d at 819 (explaining the good faith exception does not apply if "the affidavit is 'bare bones' or 'so lacking in indicia of probable cause' that reliance is unreasonable") (quoting *Leon*, 468 U.S. at 923), nor can he show that "courts have clearly held that a materially similar affidavit previously

failed to establish probable cause." *United States v. Woolsey*, 535 F.3d 540, 548 (7th Cir. 2008). Thus, the good faith exception would apply.

3. CONCLUSION

For all of the reasons noted above, the Court is obliged to deny the defendant's motion to suppress (Docket #12).

Accordingly,

IT IS ORDERED that the defendant's motion to suppress (Docket #12), be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 17th day of July, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge